UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANETTE ESTRADA, et al.,

          Plaintiffs,

                            CIVIL CASE NO. 05-40168

v.

CORPORAL JAMES STEWART       HONORABLE STEPHEN J. MURPHY, III
HOWELL, et al.,

          Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Before this Court are the plaintiffs' motion for summary judgment [docket entry #33] and the defendants' motion for summary judgment [docket entry #29]. On November 6, 2008, the Court held a hearing on the motions for summary judgment. Having reviewed the motions for summary judgment and the relevant portions of the record, the Court denies the plaintiffs' motion for summary judgment and grants the defendants' motion for summary judgment for the reasons below.

BACKGROUND

The plaintiff Jeanette Estrada is the personal representative of the estate of Michael J. Estrada, whose death on May 26, 2002 is the reason for this lawsuit. The plaintiffs Jeanette, Nicasio, and Pauline Estrada are Michael's family members. They have filed suit against Corporal James Howell, Corporal John Martin, and Sergeant Robert Steele, all police officers with the Lincoln Park Police Department.

Michael Estrada was a 27-year old man who resided with his parents at 1929 Montie Street in Lincoln Park, Michigan. Michael suffered from a congenital defect in his legs,

chronic low back pain, and mental illness. He was prescribed Prozac for his mental illness. Sometime during the day of May 26, 2002, Michael got into an argument with his parents about not being invited to a party. He was angry, upset, and irrational. At approximately 7:00 p.m., officers from the Lincoln Park Police Department, including Officers Howell and Martin, were dispatched to the Estrada residence to investigate a report of a family disturbance. Michael, who had been drinking alcohol, was involved in a heated argument with his parents. Arriving at the scene, Officers Howell and Martin observed Michael standing on the front porch of his parents' residence in an intoxicated and irrational state, holding a kitchen knife. Michael threatened the officers, saying "someone is going to get stabbed." The officers also reported that Michael told the officers "that they better get their guns out because someone is going to have to shoot me." When the officers approached the residence, Michael retreated into the residence and closed the doors and windows.

Law enforcement then surrounded the house. There were no other people and no firearms in the house with Michael. While he was in the house, Michael spoke to the officers through a window. Michael continued to remain visibly disturbed, intoxicated, and irrational. Waving two 13.5 inch-long kitchen knives, one in each hand, Michael threatened to stab any officer who entered the house. According to Officer Howell's police report, Michael told him that if the police left the residence, Michael was still going to stab them.

After some discussion, the police made a decision to withdraw from the vicinity of the house. They informed Michael that they were leaving the scene, and took up surveillance positions outside of Michael's view. Less than ten minutes later, Michael exited the house, climbed the backyard fence, and entered the backyard of a neighboring residence. Seeing Michael leave the house, the officers followed him.

2

As Michael moved through the neighborhood holding a kitchen knife in each hand, the officers remained in close proximity to Michael. At one point, a bystander apparently observed Michael lying on his stomach on the ground, with one of the officers instructing Michael to stay on the ground and to drop the knives. (The plaintiffs argue that the officer allowed Michael to get up even though this would have been a good opportunity to subdue Michael). A bystander also apparently observed Michael spend 1.5 minutes squeezing through a gate and some bushes. (The plaintiffs argue that the officers were present at this time and could have used this opportunity to subdue Michael when he was distracted with the gate and bushes, but that they did not do so). During the entire standoff, although the officers carried pepper spray, pepper spray was never used in an attempt to subdue Michael. There is also a factual dispute as to whether the officers gave Michael explicit warnings that if he did not drop the knives and surrender, deadly force would be used.

The standoff lasted for approximately 10 or 15 minutes. The parties dispute what exactly happened at the end of the police standoff. According to the plaintiffs' version of the events, at the end of the standoff with the police, Michael was standing on the curb of the street for at least 10 seconds, and did not lunge towards the police officers. Then Officer Martin shot Michael in the knee with a shotgun. A very short time later, Officer Howell shot Michael two times in the back with a pistol. The plaintiffs allege that there was a gap of approximately 5 seconds between the shotgun and the pistol firing. The medical examiner's report indicated that there was no evidence of a close firing. Instead, the medical examiner's report indicated that the initial shotgun blast to the leg caused Michael's body to twist, explaining the pistol shots to Michael's back. The plaintiffs argue that the officers must have been about 8 to 9 feet away from Michael when they fired their

3

weapons.

The defendants' version of the events of what happened at the end of the standoff differs from that of the plaintiffs. The defendants claim that the were closer to Michael than the plaintiffs allege, about 5 to 6 feet away, and that Michael lunged at the officers with his knives. Several bystanders testified that they saw Michael lunge or stumble towards the officers. Fearing for their safety, Officers Martin and Howell shot Michael in quick succession with a shotgun and a pistol. An ambulance arrived at the scene within 5 minutes of the shooting, but Michael died soon after due to his injuries.

Subsequently, the plaintiffs brought this civil rights action against the defendant police officers pursuant to 42 U.S.C. § 1983, alleging that the defendants violated Michael's constitutional rights. The plaintiffs filed suit against Officers Howell and Martin, the two police officers who fired the guns. The plaintiffs also filed suit against Sergeant Steele, who was the supervising officer at the time of the standoff.

## LEGAL STANDARD

I.  <u>Standard for Summary Judgment</u>

The parties each filed motions for summary judgment pursuant to the Federal Rules of Civil Procedure 56(c). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The nonmoving party, however, must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

II.  Standard for Qualified Immunity

In support of their argument that they are entitled to summary judgment, the defendants assert that they are protected by qualified immunity.

> Qualified immunity is an affirmative defense that shields public officers from liability under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 639, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980). The Sixth Circuit has adopted the Supreme Court's holding in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), that a ruling upon a governmental actor's assertion of qualified immunity involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."

*Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In the current case, the plaintiffs claim that Michael had a constitutional right to be

5

free from excessive force and that this right was violated. "All claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A police officer is prohibited from using deadly force "to seize an unarmed, non-dangerous suspect." Id. "Rather, the use of deadly force is only constitutionally permissible if 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others . . . .' " *Livermore v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

When determining the reasonableness of the force used, some factors for consideration include "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Id.* "These factors are not an exhaustive list, as the ultimate inquiry is 'whether the totality of the circumstances justifies a particular sort of seizure.'" *Id.* (quoting *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005)).

"Courts must determine whether a particular use of force is reasonable based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the

circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). In other words,

> [a]n officer's prior errors in judgment do not make a shooting unreasonable as long as the officer acted reasonably during the shooting itself and the few moments directly preceding it. *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996). In other words, whether the use of deadly force at a particular moment is reasonable depends primarily on objective assessment of the danger a suspect poses at that moment. The assessment must be made from the perspective of a reasonable officer in the defendant's position. *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004).

*Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007).

## ANALYSIS

Both parties have filed motions for summary judgment. The Court will treat the defendants' motion first. Accordingly, the Court will take the facts in the light most favorable to the non-moving plaintiffs.

The plaintiffs argue that the defendants are not entitled to qualified immunity because the officers used unreasonable and excessive force against Michael Estrada. The plaintiffs' primary argument is that the use of deadly force when Officer Martin and Officer Howell fired their guns was unjustified. At the very end of the standoff, there is a factual dispute as to whether Michael lunged or stumbled towards the officers, or whether he stood there. Even when assuming the facts in the light most favorable to the plaintiffs, the Court finds that the police did not act unreasonably by firing their guns at Michael. There is no factual dispute that Michael was extremely unstable, was enraged, was brandishing two large knives, was threatening homicide, and was capable of killing someone. There is no dispute that Michael had exited the house and was moving through a populated

7

neighborhood. There is no dispute that Michael was unconstrained and actively resisting arrest. A reasonable officer on the scene could conclude that Michael posed an imminent threat of serious physical harm if not death to the police and to the other citizens of the neighborhood and that deadly force was therefore necessary to restrain Michael. Under these circumstances, the officers were justified in using deadly force to subdue Michael.

There is a dispute as to the length of time between the firing of the shotgun by Officer Martin and the two pistol shots fired by Officer Howell. Though some witnesses claim that the shots were fired simultaneously, the plaintiffs present evidence that there may have been a delay of up to 5 seconds between the shots. The plaintiffs argue that this delay is a sufficiently long period to make the pistol shots unjustified. The Court disagrees. Even assuming that the pistol was fired 5 seconds after the shotgun, shooting the pistol after such a delay was not objectively unreasonable. The Court must consider this incident from the perspective of a reasonable officer at the time of the event without the benefit of 20/20 vision. *See Smoak*, 406 F.3d at 783. Here, Michael posed an imminent threat of serious physical harm to the officers and to bystanders, and a 5-second delay did not make Officer Howell's attempt to subdue Michael by shooting his pistol unreasonable, especially if injuries from the first shot to the leg caused Michael to move or lunge forward while still brandishing a knife.

The plaintiffs also argue that, when considering the totality of circumstances, the officers acted unreasonably by their failure to keep Michael barricaded. The plaintiffs contend that the police officers failed to treat Michael as a barricaded individual, failed to maintain a visible police presence around the house, and advised Michael that they were

8

leaving the scene while knowing that if they left the scene, Michael would leave the confines of the home. The plaintiffs argue that in so doing the officers recklessly and/or deliberately "baited" an irrational, but isolated and confined, subject out of the confinement in order to justify the use of lethal force. This argument by the plaintiffs that the police acted unreasonably by "baiting" Michael has no merit. There is no evidence that the plaintiffs willed to unnecessarily kill Michael and planned to lure Michael out of the house. This is not a reasonable inference to draw from the facts. In addition, withdrawing from the immediate vicinity of the house is not an unreasonable action for law enforcement to take.

The plaintiffs finally argue that the defendant officers failed to implement all non-lethal measures that were available to them in order to subdue Michael. In particular, the plaintiffs argue that there was a failure to maintain a safe distance between the officers and Michael and failure to keep an object between the officers and Michael. The plaintiffs point to several instances where Michael was allegedly on his stomach on the ground for 2 minutes, and between the gate and the bushes for 1.5 minutes, as being times where the police could have used pepper spray to subdue Michael. The plaintiffs observe that the officers failed to use pepper spray and that this was contrary to the directives of the Lincoln Park Police Department. Finally, the plaintiffs assert that the defendant officers failed to give Michael sufficient explicit warnings that they were about to use deadly force.

All of these arguments put forward by the plaintiffs are not persuasive even when assuming the facts are as the plaintiffs allege. The Court must look at what occurred at the time of the incident without the benefit of hindsight and must defer to the on-the-spot judgment of the officers. In this case, the existence of alternate outcomes or strategies for

handling the incident do not make the actions of Officers Martin and Howell unreasonable or excessive.

CONCLUSION

The Court is mindful of the fact that Michael's death was a tragic and heartbreaking event. Even when considering the facts in the light most favorable to the plaintiffs, however, the Court believes it must find, as a matter of law, that the actions of Officers Howell and Martin in using deadly force to subdue Michael Estrada were not unreasonable under the circumstances. Consequently, the officers are entitled to the defense of qualified immunity.

The plaintiffs have also filed suit against Sergeant Steele, the supervising police officer. Since there was no violation of Michael's constitutional rights by Officers Howell and Martin, Sergeant Steele cannot be liable as their supervisor. The defendants are entitled to summary judgment in their favor and this case should be dismissed. Moreover, since the Court finds that the defendants prevail when considering the facts in the light most favorable to the plaintiffs, the plaintiffs' motion for summary judgment must necessarily fail.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment [docket entry #29] is **GRANTED** and the plaintiffs' motion for summary judgment [docket entry #33] is **DENIED**.

**IT IS FURTHER ORDERED** that this action, Civil Case No. 05-40168, is **DISMISSED**.

**SO ORDERED.**

                s/Stephen J. Murphy, III  
                Stephen J. Murphy, III  
                United States District Judge

Dated: November 18, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 18, 2008, by electronic and/or ordinary mail.

                s/Alissa Greer  
                Case Manager